is United States v. Whitting. Ms. Lourish, good to have you here. Thank you. Lisa Lourish on behalf of the appellant, Jason Matthew Whiting or Whitting. This appeal presents the question for the court of whether a defendant who was erroneously sentenced as a career offender can qualify for a drug reduction under 18 Commission's policy statements and amendments that govern who is eligible for drug reductions. Whiting is eligible for reduction because the language in United States Sentencing Guideline 1B.1.10 explains a defendant is entitled to a reduction if quote, the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the guidelines manual, end quote. So are you pursuing relief for Mr. Whitting under a 2255 now? I am, Your Honor. It's a parallel proceeding that the district court has not yet ruled upon whether or not his counsel was ineffective. With respect to whether or not Mr. On this issue. On the same issue, whether or not his counsel was ineffective for not noticing that he was not a career offender. Is that the only issue that you raise in the 2255? That is the only issue. It's a counsel petition and the district court has ruled that they can proceed in parallel because they're separate issues. And so the key for Mr. Whiting's claim for relief before this court is that the word applicable is what governs here from Sentencing Guideline 1B.1.10. All the parties agree that Mr. Whiting is not a career offender and therefore the applicable range is his drug weight guideline range. It's not the career offender guideline. And I think it's significant that 1B.1.10a does not speak in terms of the past tense. It does not say the guideline range that applied at sentencing is what's relevant. It says applicable, the present tense. And so it's the unique facts of this case where what everyone agrees the applicable guideline ranges happens to differ from the guideline range that was used at the time of his sentencing. Now, of course, Mr. Whiting has to acknowledge that the second sentence of Sentencing Guideline 1B.1.10a when it instructs the district court how to decide what range is applicable, it says that the district court can substitute in the new guideline range, in this case, the new lower drug weight guideline range, but has to, quote, leave all other guideline application decisions unaffected, end quote. And it was this language that the district court concluded meant that the court was unable to fix what everyone agrees is the erroneous cross-reference to the career interpreted it to mean that he could not delete essentially from the pre-sentence report this erroneous cross-reference. And I think that the court should find that the policy and the rest of the statute and the rest of the Amendment 782 and 1B.1.10 show that Whiting is precisely the sort of defendant who was expected and was desired to be able to receive and take advantage of this sentence reduction, and that it would be erroneous and not a delete what is an error from this pre-sentence report. And so I think that there's two other ways the court could potentially interpret this language, quote, shall leave all other guideline application decisions unaffected, end quote, that would be consistent with the statute and the rest of the scheme, and that would allow Mr. Whiting to be found eligible for this relief. The first way is to view this language about not leaving all other guideline application decisions unaffected is to consider what a guideline application decision is. When a probation officer prepares a pre-sentence report, there are many factual determinations that probation officer has to make. Should the defendant receive a role enhancement or mitigating role reduction? Did the factual based considerations about whether a threat of violence was used that all affect the guideline determination by plus twos, minus ones? Those are the sort of factual determinations this court could find this language applied to, that when we come for a drug reduction hearing, we don't want to relitigate, well, technically was a threat of violence used or not, or maybe he should have gotten a minus two for his insignificant role in the offense. And the reason that this matters is as the court knows, there's a limit to how much of a benefit a defendant can receive when they go before the court for this drug reduction. The district court can only reduce a defendant's sentence as low as the new amended guideline range allows. So that specific number is important. And there's good reasons why we don't want to relitigate at that point what the guideline range is. And that's consistent with the Supreme Court's decision in Dillon versus United States. Now the government and the district court have argued, or the district court has ruled and the government has argued that Dillon precludes Mr. Whiting from relief because the language from Dillon versus United States says that a defendant is not entitled to a full resentencing when it comes to a 3582 drug reduction motion. And that for the court to fix the mechanical, to mechanically fix the pre-sentence report in this instance to remove the erroneous cross-reference is akin to a resentencing. I think it's important for the court to look at what actually happened in the Dillon case to understand what that language about resentencing means. In the Dillon case, the defendant was sentenced under the mandatory guideline regime prior to the Supreme Court's decision in Booker. And in the interim, the crack cocaine drug reduction came. He applied for the drug reduction. And also said, now that Booker has happened and my guidelines are advisory, I want the court to look at all the 3553 factors and not just sentence me to the bottom end of my new amended guideline range. I want to take advantage of those factors and have an even lower sentence. And the Supreme Court found we can't do that. That's not what the statute authorizes. That's not what the guideline advisory language authorizes. We can only sentence you as low as the bottom end of your drug weight guideline. Now that's a very different scenario from the one that Mr. King is resentencing. He's asking the court to fix an unambiguous error. And I think that this court could consider as relevant its prior decision. I know that Judge King and Judge Thacker, you were on the United States versus Williams case. I think that there's a relevant principle from that case, which is a different context. The court considered, does somebody who had a drug weight guideline range underneath their mandatory minimum, statutory mandatory minimum, qualify for a In that case, the court found that even though the guidelines say that the guideline range becomes the mandatory minimum, and that mandatory minimum was not affected by the retroactive drug amendment, that the defendant still qualified because it was within the obvious policy and intent of the Sentencing Commission to have defendants who received substantial assistance motions still qualify. So the court can look at the full context of 1B.1.10 and the obvious policy that it was intending to implement and find that Mr. Whiting qualifies. I've also suggested in my briefing that the rule of lenity can apply in the circumstance because of the ambiguities in the statutory scheme. There are several ambiguities that the court can consider. First, there's the ambiguity, the difference between whether or not someone's present tense guidelines, what's applicable in the present tense that we see in 1B.1.10 with the language that's used in 3582C, where we see the Congress is using the word based on was the person sentenced based on something, but Congress refers us to the Sentencing Commission to give us guidance on what does it mean for something to be based on the guidelines. Then we have the Sentencing Commission using the present tense, what's applicable to the defendant. There's also ambiguity over the term based on that the Supreme Court is still considering actively. As I mentioned in my 28J letter, the court will hear two cases on Monday that will potentially be relevant, potentially not, to the language of how broadly based on can be interpreted. Mr. Whiting's case does not depend on either of those cases. The court can find now that under the statute as it exists and under the guideline policy as it exists, that the court has the authority to correct an error of this nature without waiting for those decisions, but it is possible that continuing ambiguity about what a sentence is based on may affect his case one way or the other. I would also note that the rule Mr. Whiting asked the court to implement in this case- How often do we apply that rule of lenity in the last few years? Well, Your Honor, I certainly didn't wake up this morning and look forward to arguing the rule of lenity on behalf of my client. I can't say that it's been applied frequently, but it is still, there are cases obviously that support the court's ability to apply it. In a case like this where a clear error was made and we don't have to have a broad rule here that's going to allow a big end run around the finality of judgments, we're talking about a rule this court could craft that would allow Mr. Whiting to have relief under the statutory scheme that would only allow defendants where their applicable guideline range unambiguously and agreed to by the government is different than the guideline range that was used at the time of sentencing, where there's a clear error. So we don't have to worry about letting in- You don't have any rule of lenity cases? Not recent rule of lenity cases, Your Honor. The court's mentioned it a time or two. That's correct. I remember Judge Widener used to ask about it in an oral argument every now and then. That's correct. I do have, Your Honor, some admittedly old cases that suggest the court can avoid unjust results from the statute. That's Harris v. United States from this court, 215 F.2d.69 from 1954, and that you can interpret a statute in meeting with its spirit and the purpose of the enactment, and also United States v. Watson from this court, which is 496 F.2d.11.25, this is from 1973, that the court can essentially consider the purposes that motivated Congress in this case to do so, and to do so accordingly. But I do think it's important that this rule would not open the floodgates for other defendants. It would still be the case that people who are legitimately career offenders, their applicable guideline range is the same thing as the guideline range that their sentence was based on. The retroactive drug amendment did not change that. You're going to be raising some of these same issues in the event that you were unsuccessful today in a 2255. That's correct, Your Honor. The court would have the authority to give you the relief you seek there. The problem, Your Honor, with the 2255 motion is the government has alleged that it's untimely because it was filed more than a year after the decision became final. My office only became aware of this case because we were appointed to represent Mr. Wedding to investigate whether or not he may have any claim for relief under the Johnson v. United States case. And in reviewing the presentence report, it became obvious that there was a clear error that the government has refused to allow him to proceed on the 2255 without raising the timeliness far. So I have arguments, of course, for why I think an exception may apply there, but it's far from a clear path for relief, which is why we're aggressively . . . Is that pending in the Western District? That is, Your Honor. It's pending in the Western District. Is that before the same judge? It is, Your Honor. The same sentencing judge that sentenced him originally. But it's far from a . . . And who was in the law year? There was a court-appointed private attorney? That's correct, Your Honor, who's now a judge. Who's now a judge? Federal judge? No, a state judge, Your Honor. Yes. So that is proceeding, but I think the court should consider the ability to give Mr. Wiley relief now because that's far from an uncertain result that we'll have in the district court. Well, if there's no further questions, I'll reserve the remainder of my time for rebuttal. Thank you. Thank you very much. Appreciate it. Mr. Duncombe, did I pronounce that correctly? Yes, Your Honor. Why don't you let them proceed with their 2255? Well, Your Honor, may it please the court. The 2255, which is pending in the Western District of Virginia, the government has opposed on both timeliness issues and on the merits. The government has an argument that . . . Right. Well, why don't you let him . . . Why don't you get past the timeliness issue and let him proceed on the merits? I mean, you agree that there's an error here. We agree that there's an error. We don't agree . . . You agree that there's an error in this case, in the sentencing? Absolutely. We've agreed that from the beginning, that he was not . . . . . . to justify the exercise of some discretion and whether you interpose that statutory bar. Of course. How is it just to continue to sentence him for something that the government agrees was an error? How is that justice? Without getting too deeply into the weeds of the 2255 merits, although I'd be happy to spend all the time the court wants discussing the merits of that. Our essential argument on the merits is that . . . Well, it comes up, or it jumps off the page. It's pertinent here. When you all come in and say, there's an error, but the court can't fix it. Absolutely. And there might be an avenue of potentially fixing it under the 2255. There might be, and that is for . . . But then the government doesn't want to fix it. The government . . . Maybe it is the rule of entity. That makes a little more sense now. Maybe that supports the rule of entity. That's just what I was thinking. So let me kind of unpack this a little bit. So the first issue, I believe, before the court is whether 3582C2, by its terms, applies here and affords some relief. Then you get to the question of the rule of lenity, if the court finds that that statute, as informed by the policy statement, is ambiguous, as to . . . But the rule of lenity, as I understand it, does not take into account factors other than we have been unable to interpret this statute based on all the statutory construction. Now, the question of the 2255, the government's position on that is not only was it filed, I believe, three or four years too late, but also that as to prejudice, while we agree there was an error, the prejudice prong under a Strickland analysis, this error was made at the plea negotiation stage. And this was a case where you have to kind of step back and take a 50,000-foot view and say, okay, this was a defendant who was facing mandatory life if he proceeded to trial. The government agreed in order to secure a guilty plea to allow Mr. Whiting to, or to dismiss the 851 information as to one of the prior drug convictions in Mr. Whiting's past. So then you got to a point where he was facing mandatory 20 years. The government agreed to file a motion for substantial assistance under 5K, or That allowed the court to depart downward from that and get to the sentence it eventually reached in this case, which was 144 months. Now, if counsel- This guy was your witness? Excuse me? This guy was your witness? He provided substantial assistance. I know. And- I'm not, he was your witness. He was, he was, he got, you got a substantial assistance motion from the government. That, that usually goes to cooperating witnesses. Yes, Your Honor. And cooperation can take multiple forms. It can take multiple, but I'm asking you specifically about being a witness. I don't believe that he, I'd have to recheck the record. Whether he was a witness or not, he helped the government. He cooperated, substantially cooperated. Yes. And that's why instead of facing mandatory life, he got a sentence of 144 months. I don't even understand why that matters. I'm sorry. It, it matters, Your Honor. What's the difference in, what's the difference in the sentence he received for the, including the erroneous career offender designation and the sentence he may receive without it? Well, it, it depends a little bit, Your Honor, on what the court decides. If I understand your question, if he receives the benefit of a 3582 C2 reduction, he would receive a reduction down from his guidelines range under 2D1.1, which was 151 to 188. So he would then receive the reduction. That would be, I think, 121 to 151. And then any 5K reduction that the court thinks is appropriate. Why is it that prejudice? Because the error was made at the plea negotiation stage. So the error was that the, the, the defendant is arguing that if his counsel had been effective, he would have caught this career offender error. And the government's argument. Is that just? I think that there are, I think that it, I think that there are a variety of situations where a situation. Was it just the defense lawyer's error or was it also the prosecutor's error? It was everyone's error. It was the government's error. It was the probation officer's error. It was the court's error. It was the court's error. So, uh. But ultimately, so. That kind of gets back to, I mean, this, uh, as to why the government wouldn't let the person proceed in the 2255. Because, because the error was committed at the plea negotiation stage, you have to look at what would have happened if the defense counsel had been effective. No, I think the government's role is to see that justice is done. Absolutely. And, and justice in this case is going through all the steps of the analysis of 2255 and Strickland prejudice. So the government was party to the error. The prosecutor was culpable. The judge, the court got it wrong. You just said that. The court did get it wrong. The probation officer got it wrong. That's right. So it's not just the defense counsel. No, but, but if. It's not just the defense counsel. That 2255 goes directed to the offense, to the defense counsel. But you've said here today, I don't think I, I didn't realize it until you just said that, that everybody in the courtroom was wrong. Absolutely. I mean, that's, goes to the, uh, the fairness and integrity of the proceedings when all of you mess up. Absolutely. But the question for prejudice under Strickland is if the error had been caught, if the counsel had been effective, would the result have been different? And in this situation, if counsel at the plea negotiation stage had realized that Mr. Whiting was not a career offender, counsel would have realized that the plea agreement they drafted was not worth the paper it was printed on. I thought the plea agreement was drafted by the government. That's the way they usually are. Plea agreement was drafted by the government and, and given to the defense. And they both agreed, yes, he's a career offender. And we, but plea agreements are drafted by the government. We've ruled about that a few times. Yes, Your Honor. We just drew them against the government. Yes, Your Honor. And the government's point on prejudice, in addition to, well, let's, let's stick with the point that, that I was just making, which is if the defense counsel had been effective, he would have realized at the plea negotiation stage that Mr. Whiting was not a career offender. Upon realizing that, the parties would have come to a different agreement of some sort and the defendant nor the government can show what the agreement would have been. What we do know is that the government consistently felt that a sentence somewhere around 170 months was appropriate for a defendant facing mandatory life, for a defendant who had substantially assisted, and the defendant, the government was from a mandatory sentence. And upon realizing that the career offender designation was no longer available, the parties in all likelihood would have renegotiated that plea deal and may have come up with a totally different plea agreement, such as a C plea, such as a C plea that would have made a sentence in about the range of 170, which is what the government always thought Mr. Whiting deserved, that would have made that possible. Tell us why, as opposed to the 2255, why Mr. Whiting is not entitled to relief here under 3582. Because, Your Honor, the plain language of the statute and of the policy statement indicates that 3582 was not meant to apply to a situation like this. And I think that the first place I would obviously look is the text of the statute. And we think that the text of the statute is clear and unambiguous when it says that an amendment to the guidelines that the sentence was based on has to have changed, and it refers the court to the policy statement. And the policy statement is clear that if you're doing any sort of reduction under 3582, you only fix the guidelines section that relates to an amendment that was made retroactive. You leave all other application decisions of the court undisturbed. And Dillon is a great example where the justices essentially assumed that the errors that the defendant was raising were valid. The court didn't say, well, let's see if these errors you're raising that happened at your original sentence have merit or not. The court said 3582C2 does not allow us to correct other errors in the sentencing proceeding. So whether it was a Booker error of treating the guidelines as mandatory or an error in calculating the defendant's criminal history category, which were the errors complained of in Whiting, 3582C2 does not address those issues. You can get an application or a reduction under 3582C2 of your 2D1.1 guideline range, if that's the applicable amendment, but not to any other errors that were made. You leave those intact. And the government additionally argues that the rule of lenity does not apply in this case because the statute is unambiguous. Excuse me. The other point I wanted to make. How about the situation where nobody in the courtroom knew what was going on? Did we have any cases where that is the predicate set of facts? Do I have any cases where nobody in the courtroom knew what was going on? That's what you said happened here. That the defense lawyer didn't know what was going on, the prosecutor didn't know what was going on, probation officer didn't know what was going on, and the district judge got wrong. Yes, unquestionably. The district judge, I think, I'm going to take the judge's side. He got misled by everybody. I think that the error was . . . But what happens in that situation where you agree that those are the predicate facts of the case? I think that the government here, the court, defense counsel, Mr. Whiting, the district judge, everyone could agree that the error was made. And still, the district court found correctly that he was constrained by the language of the statute, that it does not authorize him. It does not authorize . . . Is there another avenue of relief then? I think that it's important . . . Where you can fix things. A government can go in and move under Rule 48A to do things that need to be done, can it? I think that there are a variety of avenues for relief in a situation like this. And it's important to, I think, separate the question of, are there any avenues for relief today that we can do from the question of, was Mr. Whiting or was a different avenue for relief once the sentencing happened? You come in here, the government, you represent the United States of America, and it comes into court, the United States Court of Appeals, and admits that there's an error in the sentencing that everyone in the courtroom made, not attributable solely to the defense lawyer. No, Your Honor. But the 2255 . . . Does the government have any obligation to try to fix it in that situation, independent of the court or anything? Does the government have an affirmative obligation to do something? The government has an obligation to do justice, and what that means is the government should and the government does, in cases of a 2255 that is untimely, examine whether waiver of the timeliness issue is appropriate in that particular case. It's not appropriate in this particular case, and this is the same argument that we've made before the district court, because although everyone in the courtroom on the day of sentencing made an error, that error would not have happened if the defense counsel had not been inadequate. And that is the 2255 argument, ineffective assistance of defense counsel. And if defense counsel had been adequate, what would have happened is we would have gone back and found another way to skin the . . . Well, the prosecutor wasn't adequate either. I agree. I agree. I'm not . . . I'm baffled. The argument I'm making, and I apologize if I'm not making it clearly, is not that this is the defense's fault versus the government's fault, but once the defense counsel, if the defense counsel had been effective, if the government had been effective, when they were negotiating that plea, realized that the result they were trying to reach, which was somewhere in the neighborhood of 140 to 170 months, which you can see based on their negotiations, they started out with, okay, let's have a 300-month C plea sentence with the possibility or the consideration of a 5K motion. The court, the district court, came back and said, well, you've got a C plea to a particular exact sentence, and now you're saying there's going to be a 5K. You've got to pick whether it's a C plea or whether it's just an agreed sentencing, or agree that certain guidelines apply, and then do the 5K. Once they did that, they came back and they agreed essentially to a situation where the guidelines range was 262 to 327 months with a 5K. So you're saying, although there are things that the government could do to correct this, the government will not correct this. Is that correct? Is that accurate? There are things that the government and the defense can do when a case is brought within the timeline of a 2255 motion or the timeline of a Rule 35 motion. But because the government's position has been before the district court that the defendant can't show prejudice from the error in the plea negotiation, because we don't know what agreement the parties would have come up with to replace the career offender guideline problem. We don't need to know that. We know what the guidelines themselves say and what the career offender enhancement that was inappropriate did to add on to a sentence. We know that, but we don't know what effect the error had on the result. That's the point that the government makes of the 2255. Are there any other options other than the proceeding we have now or the 2255? I haven't looked into what other options Mr. Whiting may have, but I would say Mr. Whiting is not that differently situated from Mr. Whiteside, which this court ruled on Bonk after Simmons was... What's Rule 48A or something? It says that I think the government can move at any time to vacate a sentence or dismiss an indictment or do anything it wants if the government is standing alone. Your Honor, I think that it's important to recognize that... You could go into court, I think, and move to vacate the sentence. I have to be honest. I did not come to this argument prepared to discuss that rule, but... I'm following up on what Judge Agee just asked you there. Of course. I think that it's important to recognize that if the district court... If we agreed to waive the timeliness issue on the 2255, for instance, and said, okay, let's proceed, let's get to the merits, and the court said, okay, well, we have to throw out that plea agreement that you all reached because the defense counsel was ineffective and it was prejudicial if the court finds that. Then we would be back to a pre-plea agreement stage where you've got the situation that existed before the plea agreement. You've got a defendant facing mandatory life imprisonment because of the 851 notices, and you've got the government... That's a risk, though, that defendants take when they file 2255s. Absolutely. Absolutely. But when the question is, okay, you've got... They take the risk in doing that, and I think the problem that comes up in this case is that the government's apparent extreme reluctance to get to the merits in this other proceeding troubles the court. Well, I will say that the government goes through an analysis and an internal discussion every time there's a case where there's a 2255F time limitation violation and there's a case that might be meritorious. The government has to look at a variety of issues, including but not limited to the potential merits of the case, although we argue that the prejudice here would not net him a lower sentence or that the error here would not net him a lower sentence. In this case... If the system would look better, the system, the judicial system would look better, then the government wouldn't be coming in here and admitting that everybody got it wrong. Everybody got it wrong in the courtroom, and this fellow's in prison, and there's an admitted error. He says his error. The government says his error. The probation officer, you say. The government says got it wrong. The court got it wrong. It looks better if the system's right. I agree, Your Honor, and part of the... You basically confess in plain error. You are confessing in plain error. Maybe not on... You're arguing a third prong, that it's not prejudicial. That's the third prong of plain error, but you're admitting the fourth prong, which goes to the integrity of the judicial proceedings. I agree, Your Honor, but finality is a part of the integrity of the judicial process, and it may seem unsatisfying in some cases. I agree with that, too. Finality is. Congress could have said when they wrote 2255F, and I see I've run out of time, but if I may finish my response, Congress could have said in 2255F or in 3582C2, here are the rules. Here's how it works, but if your case is really egregiously wrong, it doesn't apply. Congress could have said in 2255F, these cases, these time limits only apply to unsympathetic cases, or these time limits only apply to non-meritorious cases, but Congress didn't do that, and there are a variety of cases from this Court and others that say on the 2255F question, that is how Congress designed it to work, whether we like it or not. And when we start to apply a statute beyond what Congress intended, because we personally feel that the result is unsatisfying, then that's where unfairness comes in, because then you have the next defendant and the next defendant and the next defendant saying, well, you extended the line for this past defendant, so why not me? And there's not going to be a satisfying answer for that, because it's going to be, well, your case is just not egregious, or your case is just not as bad. When the line is clear and everyone knows what the I mean, that seems like you're concerned about finality, and the next defendant and the next defendant and the next defendant. How many times does the government plan to get it wrong? That's what the next defendants would have to say. The government and the defense counsel never plan on getting it wrong, but the 2255 procedure Yes, yes, and the 2255 procedure is there, because we're human, because that's what sometimes we get it wrong. And the 2255F time limitation is there, because even though sometimes we get it wrong, we want to stem the tide of just being able to say, every time there's an error, you may correct it. And again, there are some errors that seem unsatisfying, but Congress designed the system so that not all errors are corrected. And, you know, I don't want to get too much more into the prejudice argument, but again, our argument on the prejudice argument in addition Prejudice is not reached unless you But when the question is, why aren't you government exercising your discretion to waive the time limit on 2255F, which is entirely within the government's discretion, the government has to examine, okay, is this a situation where there were cases in the Western District of Virginia where the U.S. Attorney's Office did waive the time limitation under 2255F, because cases were referred to the Federal Public Defender's Office after Johnson to see if they were eligible for a sentence reduction. And there was one defendant who fell through the cracks of that process and specifically was not singled out, because he was in custody originally for a state sentence. And so the U.S. Attorney's Office agreed. That was a situation where we basically put him behind the eight ball. Did you negotiate the plea in this case, or was it another assistant? It was another assistant, Your Honor. But if I had negotiated the plea and someone brought to my attention, if the defense attorney Oh, I know. You'd still be saying the same thing. No, no, no. That's not what I was going to say, Your Honor. If someone had brought to my attention during the plea negotiation stage, hey, I'm an effective attorney, and I've noticed that in your proposed plea agreement, government, you've said my client's a career offender. I would have said, oh, gosh, I'm so sorry. You're right. That's an error. I'm going to admit that I made an error. Let's negotiate a new plea agreement with this defendant who's facing mandatory life. There were a variety of ways the parties could have gotten to a sentence that was similar to the one that the court eventually got to. One of those was a C plea. So I can't say, the defense counsel can't say, nobody can say what the parties would have negotiated if defense counsel had been effective, if the government counsel had been effective, and had caught that error before they submitted the plea. I thought you've been saying all morning here that you could say it wouldn't have made a difference, so there's no prejudice. No, and the government's burden is not to prove. And I apologize if I made it sound that way, because that's not what I'm saying, because it's not the government's burden to show lack of prejudice. It's the defense's burden to show, or the petitioner's burden in a 2255, to show prejudice. And in this case, and that is an argument we're making on the merits on the 2255, but it's also one of the reasons why, after not inconsiderable hours You see, you're making it on the merits of the 2255, so the merits are pending on the 2255? Yes, the whole thing is pending. We've asked the district court to stay. So you're interposing the statute of limitations hasn't been ruled upon. That's correct. That's correct. It's all pending right now. So if there are any other questions on 3582C2, I will answer those, but otherwise we stand on the arguments made in our brief. Thank you, Your Honor. Ms. Lorsch? Do you expect this to turn into this kind of discussion? I'm happy for this discussion. I think it's pretty clear to the court, or it should be clear, that the government is choosing to not exercise the discretion it has in the 2255 proceeding where they filed a motion to dismiss my 2255. It has that discretion. It has the discretion. It has the absolute right to do that. It has the absolute right to allow the case to go forward, but the government wants to decide the merits. What can we do about that? Well, what I think this court can do now is grant my client relief under 3582 and 1B1.10. And I will quote from the Supreme Court decision in United States v. Granderson, 511 U.S. 39, 1994, where the text, structure, and history fail to establish the government's position as unambiguously correct. We apply the rule of lenity and resolve the ambiguity in the defendant's favor. And when you stood up before, you mentioned a Watson case, and what was the other one? I mentioned United States v. Watson, and I mentioned Harris v. United States, 215F2D69. Neither one is going to use the word lenity, I checked, unfortunately. But they do talk about the policy behind the statute. But what's the, where's the ambiguity, the hook for ambiguity here? The hook for ambiguity, Your Honor, is the fact that 1B1.10 uses the present tense applicable language. We all agree, the government agrees and I agree on this one thing, that the guideline that's actually applicable to Mr. Whiting is not the career offender guideline. Because that is not the applicable guideline, there's ambiguity between that and the rest of the statute, sorry, the rest of the policy statement, which directs the court on not making other guideline determinations. I think the court can also find ambiguity in that part of 1B1.10, where the district court is told to leave all other guideline application decisions unaffected, and could find that it's unclear what guideline decisions we're talking about. Deleting an erroneous cross-reference to a different guideline, the court could find is different and was not intended by the sentencing commission to be included in this statement about all other guideline application decisions. I think it's, because I can't help myself since the 2255 has come up, it's important for the court to also know that the government's prejudice analysis is directly contradicted by what the government did with another co-defendant in the same indictment. Also, there was in the plea agreement for this co-defendant, that stipulation that the defendant was a career offender, but that time the probation officer realized the person was not in fact a career offender, so the final pre-sentence report did not contain the career offender guideline. And that case went forward without any new plea agreement, nothing changed, the government simply went forward as it is, co-defendant, same situation, that person just had crimes of violence that they thought would count, and the probation officer caught that error. It's also... If you get to the 2255, I presume that's something you could alert the district court to. Yes, and I already have alerted the district court to that fact in my briefing. It's also... What's the status of the 2255? The court has not yet ruled on the government's motion to dismiss, the government's motion to dismiss on the timeliness issue, and also for the lack of merits. And to be clear, when the government suggests that Mr. Whiting has a, quote, variety of avenues of relief, that is simply incorrect. The government holds the keys at this point. The government's position has been that Mr. Whiting, even though the probation officer made the error, the government made the error, his attorney made the error, and the court ultimately adopted the error, that Mr. Whiting should have figured it out on his own within a year, and filed a timely 2255. And that's simply, I think, an untenable position. Mr. Whiting's 2255, he's also filed it in an alternative as a writ of quorum nobis, which is also about as common as the rule of lenity. And I don't expect... You ever had a quorum nobis case before? I've never personally had one. My office has had one. And in fact, it came up in the case that Mr. Duncan mentioned, where the government chose to allow the writ of quorum nobis to go forward to fix an error that it wanted to allow the court to fix about two years ago in the Western District. It's not relevant to the court's consideration of whether Mr. Whiting qualifies under the 1B1.10 or 3582, but it's actually the case that Mr. Whiting had zero career offender predicates. When this case started, it was very clear that the simple possession didn't count, but the distribution offense that the pre-sentence report also identified, and that's on the joint appendix page 53, the pre-sentence report ruled that that was relevant conduct, so it didn't get criminal history points. And the rules are very clear that if an offense is relevant conduct, it doesn't count as a career offender predicate either. So this person has zero prior serious drug offenses that should have counted under the career offender guideline, and yet the government has essentially required us to proceed in this way and try to come to this court to seek relief under the statutory scheme, and we're asking that the court find that there's enough ambiguity in the way that the scheme works with the guideline that Mr. Whiting can apply and receive the reduction. And I think that the Williams case, I'll go back to that one more time since I have the opportunity to address both you, Judge Thacker, and Judge King, can be relevant here. We've had a lot of Williams cases. So this is United States... That's a pretty common name. Fair enough. The Supreme Court had two of them one time in death penalty cases issued on the same day. This is United States v. Williams 808 F3D 253 from 2015, where under the strict language of the statute and the guideline, someone who had a drug guideline range that's lower than the mandatory minimum guideline range. Lower than the mandatory minimum. So like Mr. Whiting, for example, his drug weight guideline range is lower than the 240-month mandatory minimum. So the question is, well, does that person, if they got a substantial assistance motion, qualify for a drug reduction? Because the question has to say, well, was their sentence based on a drug weight guideline range that changed? The answer is no. It was based on the mandatory minimum. But this court found that it was the intention of the sentencing commission, based on the rest of 1B1.10 and the relevant amendments, amendments 780 and 784, that the intention was for that defendant to receive the reduction, that everybody wanted defendants in that sentence was based on in a broader way to allow him to have relief. And the same situation could result here. Thank you. Thank you very much, Ms. Lorsch. We'll come down and greet counsel, and then we'll take a short break. This honorable court will take a brief recess.
judges: Robert B. King, G. Steven Agee, Stephanie D. Thacker